PROBATE COURT AND OTHERS *v.* DENNIS MAY AND OTHERS,
AND CROSS-CAUSE,
DENNIS MAY *v.* PROBATE COURT AND OTHERS.

[ IN CHANCERY. ]

*Measure of Proof Necessary for Reformation of Written Instrument. Equity. Mistake. Probate Bond. Appeal from Order of Probate Court. Parties in Equity.*

To warrant the reformation of a written instrument for the purpose of correcting an alleged mistake therein, the mistake, if not admitted, must be clearly proved. Thus, where a bill was filed to compel the obligors in an administration bond to affix their seals thereto, and the master found that the seals were omitted, and the bond, unsealed, was accepted, through mistake, it was *held*, that the evidence, *q. v.*, on which the master so found, warranted the finding.

The bond so given was signed by D. and G. as principals, and by H. as surety, and was conditioned for the faithful performance by the principals therein of their

Probate Court v. May.

duty as executors of the will of W. The will contained, among other bequests, a bequest of money to J., to remain in the hands of the executors, for the use of J., until J's death, and then to go to J's heirs, unless J. should in his lifetime otherwise direct. W. was G's partner in business, and on W's death his property, consisting of notes, demands, &c., remained in G's hands. After a time, the administration not being settled, certain legatees, G., and other interested parties, met and divided notes, &c., thereby paying all debts and all legacies, except the legacy to J., and filed an account thereof in the Probate Court, under an agreement that that should be a settlement of the estate. One of the papers then filed showed in the account of the estate with the executors a charge to the estate of the legacy to J., but J. did not know it. The legacy was also credited to J. on G's books, and J.' knew it, but never considered whether it would have the effect to discharge D. G. became insolvent, and J. made demand on D. The obligors and J. then appeared before the Probate Court, and the court adjudged the fund to be in the hands of the executors, appointed a trustee, and ordered the executors to pay the fund over to him. The trustee made demand on D., and, D. not paying, procured H. to give his promissory note for the amount of the legacy, and discharged him from liability on the bond. The trustee then brought an action in H's name against G. and D., when it transpired that the bond was not sealed. The bill herein, to which the obligors were made parties defendant, was then filed, and the action was continued to await the result thereof. *Held,* that there was no indication in the keeping of the accounts of an intention on J's part to discharge D. of his liability as executor- and that the bond should remain on file and be treated as security to J. for the payment of his legacy, and to the orators for the performance of any duty tha might appear to have been neglected, the same as though it had been sealed in accordance with the intention of all parties.

By the will the executors were appointed "jointly and severally." They were jointly appointed by the Probate Court, and, on accepting the trust, they gave a joint and several bond. *Held,* that they assumed a joint as well as a several liability.

The order of the Probate Court was made on hearing, after due notice, and in presence of J. and the obligors; but D. in fact misunderstood the effect thereof on his rights. H. gave his note and the action was brought within the time allowed for appeal from that order. *Held,* that the order was proper and final, and that the executors were not excused from appealing in the usual manner, by the giving of the note, &c.

The Probate Court was made co-orator with J. and the trustee. *Held,* no misjoinder.

APPEAL from the Court of Chancery. The bill, wherein James May, Henry Heywood, and the Probate Court for the District of Essex, were orators, and Dennis May, Solon Gould, and David Hibbard were defendants, was filed to procure the defendants to be ordered to affix their seals to an administration bond wherein Hibbard and Preston May were sureties and the other defendants were principals. The bill alleged that the bond was given to secure the.performance by May and Gould of the duties of executors of the will of William B. May, under which the orator James was entitled to a legacy, and that the affixing of the seals was

omitted, and the bond, unsealed, was received by the Probate Court, by mistake. The bill prayed for the relief already indica-cated, and that the bond, when sealed, should have the same force and effect as though it had been sealed when delivered, and for general relief. The defendant May demurred on the ground of misjoinder of orators, and answered, alleging that he was igno-rant of such matters, that he "did not know but said bond was properly signed and sealed", that if it was not, it was the fault of the Probate Court, and that the orator James took from Gould a note or other evidence of indebtedness for the legacy, and there-after treated Gould as alone holden until Gould became bankrupt. He also filed a cross-bill, to which the orators in the original bill and his co-defendants were made parties defendant, alleging that a decree of the Probate Court whereunder the obligors were ordered to pay said legacy to a trustee, was fraudulently obtained, and alleging the acceptance of other evidence of indebtedness from Gould, as in his answer, and praying that the decree might be so modified as to release him from his liability. The defendant Gould demurred also on the same ground, and answered, alleging that the bond was such as was acceptable to the Probate Court, and that if there was any mistake therein, the fault was chargeable to such court, that it was too late for the court to interfere, that he credited the amount of the legacy to the orator James, and that the orator ever afterwards treated him as the sole trustee of the fund. The defendant Hibbard made no answer. The cross-bill was answered by such of the defendants thereto as were orators in the original bill, by denial of material allegations. A master was appointed, and he reported in substance as follows :

In November, 1861, William B. May died testate, bequeathing sundry sums to various persons, and, among others, the sum of $2,000 to his brother, the orator James, to remain in the care and custody of the executors until the death of said James, and then to pass to his heirs, unless said James should in his lifetime other-wise direct, the income thereof to be paid to said James yearly. The defendants Dennis and Gould were thereby appointed "jointly and severally to be executors" thereof. On the 29th of the same month the will was proved, and Gould, who had been a partner

of the testator, and had in his hands a large amount of the testator's property, consisting of notes and demands that had arisen out of their partnership business, and the defendant Dennis, who had none of the property, accepted the trust, and were by the court appointed executors, and entered upon performance of their duties under such appointment. On the same day they, with Preston May and David Hibbard, signed and left with the court a bond in usual form, reciting that they "jointly and severally" bound themselves, &c., and conditioned for the faithful performance by said executors of their official duties. That bond was not sealed, although it contained the recital " sealed with our seals". Commissioners were appointed and reported. The time for the settlement of the administration account was extended from time to time. Preston May died on February 2, 1865, leaving no estate. At some time in 1868, and before December, the executors went to the Probate Court with papers showing their doings with respect to the estate, and presented them to the judge, who told them he could do nothing towards a settlement with them until after publication of notice, but that if all interested parties were satisfied, it would be all right. Nothing further was then done. But in December, questions having arisen as to settlement of the estate, parties interested met and adjusted matters between Gould and various legatees and various parties to whom the estate was indebted, divided notes, &c., belonging to the estate among legatees, and agreed that papers then made showing such adjustment and division should be filed in the Probate Court, and should constitute a settlement of the estate. All debts and legacies, except the legacy to the orator James, were thereby paid. The defendant Dennis took no part in that settlement. The papers then made were left in the Probate Court, in February, 1869. One of the papers made and filed as aforesaid was a statement of the account of the executors with the estate. The estate was therein charged with the legacy to the orator James. Of that the orator knew nothing. The amount of it was also credited to the orator on Gould's books, and that the orator knew, but nothing ever called to his attention the fact that it might or might not have the effect to discharge the defendant Dennis, and leave Gould alone

liable therefor.   In 1876, Gould became insolvent, and the orator James then for the first time made demand on the defendant Dennis.   On January 10, 1877, a hearing was had before the Probate Court on due notice, at which Hibbard, Gould, the orator James, the defendant Dennis, and Heywood, who was then acting as counsel for Hibbard, were present.   The defendant Dennis then contended that, as he had assumed no control, and as all the property went into Gould's hands, he should be discharged ; but the court adjudged the legacy to be in the hands of both executors, and appointed Heywood trustee thereof, and ordered the executors to pay the same over to him.   The defendant Dennis, although present when the decree was made, in fact misunderstood the effect thereof on his rights and interests.   Heywood thereupon made demand on the defendant Dennis, and, nothing being paid, procured Hibbard, about January 19, to give his note, on which there was a surety, for the amount of the legacy, and executed to him a release from his liability on the bond.   He then brought an action in Hibbard's name against Gould and the defendant Dennis for money laid out and expended.   It then transpired that the bond was unsealed.   The original bill herein was thereupon filed ; and that action was continued to await the result thereof.   The master found that the bond was delivered to the Probate Court by the executors for the purpose indicated in its condition ; that the omission to affix the seals was without intent on the part of any one interested, and was a mistake of which the executors were ignorant ; that it was accepted as it was, because the judge of probate failed properly to inspect it ; and that all parties remained ignorant of the want of seals until action was brought as above stated.   The evidence on which the master found as stated in regard to the bond was the testimony of Gould, who testified in effect that the bond was delivered to the court to secure the faithful performance of the duties of executors, that no other bond was given, and that he had no recollection about the seals ; from the testimony of several witnesses, including the defendant Dennis, who testified that when the executors went before the Probate Court, at the hearing in 1877, said Dennis claimed not that he had given a defective bond, but that he ought not to be held

liable because he had none of the property; from the fact that an action was brought as stated by Hibbard; and from the fact that the settlement of the estate progressed as though a valid bond had been given, without reference to the defect by any interested party. It appeared that the defendant Dennis was solvent at the time of the making of the decree of the Probate Court, and ever remained so.

At the March Term, 1879, Essex County, the cause was heard on pleadings and report, when a decree *pro confesso* was taken against Hibbard, and the court, Ross, Chancellor, ordered a decree, *pro forma*, for the orators in the original cause in accordance with the prayer in their bill, with cost, and dismissed the cross-bill, with cost.

The defendants Dennis and Gould appealed.

—— ——, for the orators.

The bond having been left unsealed, and in that condition accepted by the Probate Court, by mistake, the orators are entitled to a decree ordering a correction of the mistake.

It is immaterial to the issue that Dennis did not have the fund. *Rutland* v. *Page*, 24 Vt. 181.

The executors are jointly liable by the terms of the will and of their appointment by the court. Any other view would be unjust to Hibbard. *Sparhawk* v. *Buell*, 9 Vt. 41; *Newton* v. *Newton*, 53 N. H. 537.

But the liability of Dennis is fixed by the decree of January 10, he having neglected to appeal.

*O. F. Harvey* and *Elisha May*, for the defendants.

The finding as to the alleged mistake was upon insufficient evidence. The evidence in such case should admit of no doubt, should be "the most conclusive," "the most irrefragable." *Griswold* v. *Smith*, 10 Vt. 452; *Shattuck* v. *Gay*, 45 Vt. 87; *Ford* v. *Joyce*, New York Court of Appeals, Nov. 11, 1879; *Cobb* v. *Dyer*, 9 Reporter, 176.

The settlement made by interested parties was a legal settlement of the estate, at least as far as Dennis is concerned. The

legacy to James was paid by Hibbard's note.  Thus all was done
the doing of which the bond was given to secure, so that the
bond, whether valid or not when delivered, had answered all the
ends for which it was required.  If properly sealed, no suit could
be maintained on it.    2 Parsons Cont. 636.

The executors were not jointly liable.  One joint and several
agent is not bound by the acts of his co-agent unless he partici-
pates in the act complained of.   Whart. Agency, s. 143 ; 7 Re-
porter, 595 ; Perry Trusts, ss. 404, 415, *et seq.*

The decree of the Probate Court of January 10 was void, for
that the court had no jurisdiction of the matter or of the parties
affected.  The action of the court was foreign to the purposes for
which the court was held.   *Probate Court* v. *Vanduzer*, 13 Vt.
135.   The Court of Chancery will disregard that decree.   *Hen-
drick* v. *Cleaveland*, 2 Vt. 329 ; *Downer* v. *Downer*, *supra ;
Sparhawk* v. *Buell*, 9 Vt. 41, 78 ; *Morse* v. *Slason*, 13 Vt. 296,
306 ; *Heirs of Adams* v. *Adams*, 22 Vt. 50, 62.   And see Gen.
Sts. c. 59 ; *Congdon* v. *Cahoon*, 48 Vt. 49.   If that decree is in
force, then the orators have an adequate remedy at law.   *Currier*
v. *Rosebrooks*, 48 Vt. 34 ; *Tute* v. *James*, 50 Vt. 124 ;  1 Story
Eq. Jurisp. s. 33.   Hibbard put it out of the power of the other
defendants to appeal effectively from that decree.   The note was
given and the action brought before the time for appeal expired.
*Ward* v. *Johnson*, 13 Mass. 148 ; *Hyde* v. *Long*, 4 Vt. 531 ; Wil-
liams Per. Prop. 285, and note.

The Probate Court should not have been joined as an orator.
Story Eq. Pl. ss. 50, 236, 493, *et seq.;* Bouv. Law Dict., title
Court.

The orators urge that if the bond be not reformed, Hibbard's
note may be held to be without consideration ; but that is untena-
ble ; Hibbard can now make no defence to the note.   *Holcomb* v.
*Stimpson*, 8 Vt. 141 ; *Paris* v. *Dexter*, 15 Vt. 379 ;  *Emery* v.
*Lowell*, 8 Reporter, 159.


The opinion of the court was delivered by

VEAZEY, J.   We think the master was fully warranted in find-
ing that the omission to affix seals to the bond was a mistake, a

mere oversight. It is true, as the defendant's counsel argue, that to entitle an instrument to be reformed, the mistake must be admitted or very clearly proved ; in some cases the expression is, by " the most conclusive evidence," in others by " irrefragable evidence." In this case the defendant Dennis May, who appears to be making the principal defence, does not in his answer expressly deny that the omission was a mistake, but says he was ignorant of such matters, and did not know but the bond was properly signed and sealed. The evidence is conclusive, that he and all others supposed the bond was perfect in all respects as an executor's bond, until recently, and until after Hibbard, the surety, brought a suit against Gould and Dennis May, the principals, to reimburse himself for having paid by his note the James May legacy, being a period of about sixteen years. " Sealed with our seals," is the recital in the bond itself. Taking into account all the facts and circumstances developed and established, the intent of the parties to the bond to make it perfect by sealing, as well as in all other respects, is unmistakable. We think that degree of evidence is made out which the law requires to warrant the finding of a mistake.

The question remaining is, shall the bond be held and treated just as it was intended, and supposed to be by all parties in interest ? The defendants insist that it should not, because, as they say, it has served its purpose ; because all the duties have been performed, the performance of which it was given to secure. This is assuming too much. So far as *now* appears, everything has been done in the administration, except the payment of the James May legacy to the trustee appointed to receive it. That has been paid only in this way. Hibbard, the surety upon the bond, supposing the bond was duly sealed, as all others then did, gave his note to the trustee for the amount of that legacy. After he brought the suit against the principals before referred to, the discovery was made that the bond was never sealed. Thereupon this suit was brought by the legatee James, the trustee, and the Probate Court, to secure a reformation of the bond.

The executors accepted the trust, understanding that their liability would be just such as would exist under a perfect bond.

To make the bond what they understood it was, will be doing them no injustice. Its imperfection has raised doubts, not plainly trivial, in litigation growing out of the administration of the estate. Moreover, this legacy has not reached its ultimate destination. The executors have not yet paid it to anybody. It has only been paid by a surety giving a note to a trustee under a misapprehension of facts. Under these circumstances, we think it clear that the legatee has a right to have such a bond on file as the law prescribes, and the parties intended.

The way the account of the property of this estate was kept by Gould, and the treatment of it by him and the legatee, does not indicate to us any purpose or expectation of altering the relation of the co-executor Dennis May, to the administration, or of relieving him from his liability as an executor. This all grew out of the fact that Gould, as between him and Dennis, had the charge and possession of the property. He therefore individually kept and renders the account of it.

It is claimed that the executors are not jointly liable. The will made a joint-and-several appointment of executors. They were jointly appointed by the Probate Court, and accepted the trust, and gave a joint-and-several bond. They thereby assumed a joint as well as several liability, and such is their legal liability.

It is insisted that the Probate Court had no right to order this legacy to be paid to the trustee, and that the executors were misled by the surety giving his note to the trustee, so that they did not take an appeal. The Probate Court, in a regular and proper proceeding, found that they had the amount of this legacy in their hands and ordered it to be paid to the trustee. The propriety of the order cannot be questioned. It was a final order, and could have been appealed from. It is no excuse, when they say now they did not appeal because their surety had paid that which belonged to them to pay. The duty was theirs. It was their default that occasioned the action of the surety. They cannot now be allowed to say that such action misled them. They are bound to obey that order, and the orators are entitled to have the bond in form such that it may be a security for this purpose, and a secu-

rity for the performance of any duty that now appears or that may hereafter appear to have been neglected by the executors.

The defendants demurred to the bill on the ground of an alleged misjoinder of orators. It may not have been necessary for James to join the Probate Court and the trustee as orators ; but as the Probate Court was a party to the bond, and was entitled to a good one in form, and as the trustee was interested in behalf of the legatees, and has in fact become a party in the administration of the legacy, we do not think it was improper to join them in this bill. It cannot be said they had no interest. The test as to parties to a bill is not necessity. *Marble Co.* v. *Manufacturing Co.* 47 Vt. 430.

There is no occasion in this case to settle any rights between the parties. They can as well be settled elsewhere.

The result is, that the *pro-forma* decree of the chancellor in the main cause is reversed, and the cause remanded, with direction to enter a decree for the orators that said bond be held and treated for all purposes the same as though it had been duly sealed. In the cross-cause the decree of the chancellor is affirmed.